There is agreement by the parties that the judge’s findings of fact are clearly erroneous as to what happened in Attleboro. The judge found that the defendant’s operation of his truck on Route 152 in Attleboro, before he was stopped, “was unremarkable and there was an absence of testimony regarding erratic operation.” In fact, Officer Benson had testified:
“When it exited [from the parking lot to] the street [at which point the vehicle was in Attleboro] it spun the tires in the sand and then proceeded at an extremely high rate of speed straddling the center line going 152 north, which I believe is Attleboro’s South Main Street, but I can’t be positive of that.”
Upon pursuing the truck from the parking lot, Benson radioed his dispatcher that he was “following what I believed was an O.U.I. vehicle.” Generally, however, a police officer may not make an arrest without a war *820 rant beyond the boundaries of the governmental unit he serves unless engaged in fresh pursuit of a suspect concerning an “arrestable offense, whether it be a felony or misdemeanor, initially committed in the arresting officer’s presence and within his jurisdiction.” Commonwealth v. LeBlanc, 407 Mass. 70, 72 (1990). G. L. c. 41, § 98A.
Elspeth B. Cypher, Assistant District Attorney, for the Commonwealth.
Bruce E. Thompson for the defendant.
The more subtle question, therefore, is whether what the officer had observed in Seekonk provided him with some reason to think that the defendant was in the process of committing an offense for which he could be arrested. See Commonwealth v. LeBlanc, supra; Commonwealth v. O’Hara, 30 Mass. App. Ct. 608, 609-610 (1991). The officer described his observations of what occurred in Seekonk as follows:
“I saw the vehicle — I saw a person leave the bar, enter [his] vehicle, back up, step on [his] brake heavily about ten feet back, pull forward, pull back, pull forward. The vehicle did this rough[ly] — approximately six to eight times before it exited the lot.”
The words “brake heavily” convey the picture of a lurching vehicle, such as might be in the hands of a driver under the influence of alcohol. Those movements gave the officer reason to think the defendant was operating with his coordination impaired by drink. That impression received some reinforcement from the repetitive back and forth movements of the truck, suggestive of poor control, and from the circumstance that the defendant had emerged from a drinking spot. Suspecting drunk driving, Officer Benson could follow the vehicle under observation once it crossed (about midway through the parking lot) into the neighboring town of Attleboro. The stop and arrest in Attleboro was lawful, and the evidence obtained at the stop and arrest should have been received.
The judgment of dismissal of the complaint is reversed, and the case may stand for trial.

So ordered.